EL PUEBLO DE PUERTO RICO, demandante y recurrido, *v.* ALBERTO RIVERA SEGARRA y COMPAÑÍA DE FIANZAS DE PUERTO RICO, demandado y peticionaria la última.

*Número:* CE-94-9          *Resuelto:* 19 de octubre de 1995

*Carlos Lugo Fiol, Subprocurador General,* y *Héctor Clemente Delgado, Procurador General Auxiliar,* abogados de El Pueblo; *Luis Bestard,* abogado de la parte peticionaria.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

La Compañía de Fianzas de Puerto Rico solicita que revisemos la resolución dictada por el Tribunal de Primera Instancia, Sala Superior, que declaró sin lugar la moción presentada por dicha compañía para que se dejara sin efecto una sentencia que ordenó la confiscación de una fianza expedida por ésta. Alega la peticionaria que encontró al acusado y lo puso a disposición del tribunal de instancia dentro del término reglamentario de cuarenta (40) días de haberse notificado la sentencia de confiscación, por lo que, según la Regla 227(a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, se debió dejar sin efecto dicha sentencia. Revocamos.

I

De la resolución del tribunal de instancia se desprende que el 18 de noviembre de 1992 se determinó causa para arresto contra Alberto Rivera Segarra por los delitos de daño agravado, 33 L.P.R.A. sec. 4286, y comercio ilegal de vehículos y piezas, Art. 15 de la Ley Núm. 8 de 5 de agosto de 1987 (9 L.P.R.A. sec. 3214). La Compañía de Fianzas de

Puerto Rico (en adelante la fiadora) prestó una fianza por la cantidad de doce mil dólares ($12,000) para garantizar la comparecencia del imputado a todos los procedimientos ante el foro de instancia.

Rivera Segarra fue citado para el acto de vista preliminar. Llegada la fecha citada, éste no compareció. Como su incomparecencia no estuvo justificada, se determinó causa probable para acusar por los delitos imputados. Posteriormente, Rivera Segarra tampoco compareció al acto de lectura de acusación. En consecuencia, el tribunal citó a la fiadora a una vista para que mostrara causa por la cual no debería confiscarse la fianza.

La fiadora compareció ante el tribunal e informó que había hecho gestiones para localizar a Rivera Segarra, pero que habían sido infructuosas. Solicitó cuarenta (40) días adicionales para localizarlo antes de que se confiscara la fianza. El Tribunal Superior le concedió para ello treinta (30) días. Transcurrido dicho término, compareció la fiadora y le informó al foro de instancia que Rivera Segarra había abandonado la jurisdicción.

El tribunal dictó sentencia sumaria. Ordenó la confiscación de la fianza y le impuso una nueva de cincuenta mil dólares ($50,000) a Rivera Segarra. Además, ordenó el archivo del caso hasta que Rivera Segarra fuese arrestado. La sentencia de confiscación le fue notificada a la fiadora el 21 de abril de 1993.

Posteriormente, el 21 de mayo de 1993, la fiadora presentó una moción en el tribunal a quo, en la cual informó que, de acuerdo con la Regla 227(a) de Procedimiento Criminal, *supra*, había cumplido con su obligación contractual de encontrar al acusado, quien se encontraba bajo la custodia de la Administración de Corrección por delitos cometidos con posterioridad a la fianza. Al haber localizado al acusado y diligenciado las órdenes de arresto en la prisión para que éste pudiese comparecer al tribunal dentro del término de cuarenta (40) días desde la notificación de la

sentencia de confiscación, solicitó que se cancelaran las fianzas y se dejara sin efecto la sentencia de confiscación.

Así las cosas, el 7 de junio de 1993 el acusado compareció ante el tribunal de instancia. Luego se presentó al acto de lectura de acusación y, posteriormente, al juicio. En él, hizo alegación de culpabilidad tanto por los delitos por los cuales había sido fiado por la fiadora como por los que fue arrestado mientras se hallaba prófugo de la justicia.

Luego de varios trámites procesales, el tribunal de instancia declaró sin lugar la solicitud de la fiadora de que dejase sin efecto la sentencia de confiscación. Fundamentó su decisión en que el acusado "[n]o fue ingresado a la institución penal por gestiones de la Compañía de Fianzas de Puerto Rico, sino por las gestiones de la Policía de Puerto Rico". Apéndice I, pág. 6. Como resultado, la fiadora comparece ante nos mediante un recurso de *certiorari*. Alega que el foro de instancia erró al declarar sin lugar la moción para dejar sin efecto la sentencia de confiscación de fianza, "por razón de que el acusado fue encontrado, estaba arrestado, las fianzas canceladas y el mismo puesto a disposición del tribunal ... dentro del término de cuarenta (40) días de haberse notificado la sentencia de confiscación". Petición de *certiorari*, pág. 3. Oportunamente expedimos el recurso. Examinados los alegatos sometidos por las partes, estamos en posición de resolver. Veamos.

## II

■ La Regla 218 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, establece, en lo pertinente a la controversia que nos ocupa, que toda persona arrestada por cualquier delito tendrá derecho a quedar en libertad bajo fianza hasta tanto sea convicta.

■ Por otro lado, la Regla 219 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, expone que el propósito de la fianza prestada en cualquier momento antes de la convicción es

garantizar la comparecencia del acusado ante el tribunal durante el proceso judicial llevado en su contra. Esta fianza garantiza la sumisión del acusado a todas las órdenes, las citaciones y los procedimientos ante el tribunal. Incluye el pronunciamiento y la ejecución de la sentencia, así como la comparecencia del acusado a la vista preliminar en los casos apropiados.

■ Como señalamos en *Pueblo v. Félix Avilés*, 128 D.P.R. 468, 480 (1991):

El contrato de fianza ... es un acuerdo entre el fiador y el Estado mediante el cual el primero se compromete a garantizar la presencia del imputado de delito ante el tribunal que celebra el proceso en su contra. De no cumplir con su compromiso, el fiador viene obligado a pagar al Estado la cantidad consignada como fianza. Este contrato es formalizado a tenor con las disposiciones de las reglas de Procedimiento Criminal referentes a la fianza.

■ Por su parte, la Regla 227(a) de Procedimiento Criminal, *supra*, regula el procedimiento de confiscación de la fianza cuando el acusado ha incumplido con las condiciones de ésta. La mencionada regla dispone, en lo pertinente, que si el acusado deja de cumplir cualquiera de las condiciones de la fianza, el tribunal ordenará a los fiadores que muestren causa por la cual no deba confiscarse ésta. Si los fiadores explican satisfactoriamente el incumplimiento en que se funda la orden, el tribunal podrá dejarla sin efecto bajo las condiciones que estime justas.

■ A continuación, la referida regla señala que de no mediar una explicación satisfactoria para el incumplimiento, el tribunal procederá a dictar una sentencia sumaria contra los fiadores y confiscará el importe de la fianza. Esta sentencia no será firme y ejecutoria hasta cuarenta (40) días después de haberse notificado. Si dentro de ese período de cuarenta (40) días los fiadores llevan al acusado ante la presencia del tribunal, éste la dejará sin efecto.

■ Finalmente, la regla mencionada establece que el

tribunal tendrá discreción para dejar sin efecto la sentencia de confiscación, en cualquier momento antes de la ejecución de la sentencia, siempre que medien dos (2) circunstancias: en primer lugar, que los fiadores hayan "producido" al acusado ante el tribunal y, en segundo lugar, que el tribunal constate, a su satisfacción, el hecho anterior.

■ La solicitud para que se deje sin efecto la sentencia de confiscación se hará mediante una moción, la cual se presentará dentro de un término razonable, pero en ningún caso después de haber transcurrido seis (6) meses del registro de la sentencia u orden. La presentación de esta moción en ninguna forma afectará la finalidad de una sentencia ni suspenderá sus efectos.

■ Por otro lado, la Regla 225 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, establece cómo se llevará a cabo la entrega del acusado al tribunal:

> Con el objeto de llevar a cabo la entrega del acusado, los fiadores podrán en cualquier momento antes de haber sido finalmente exonerados, y en cualquier lugar dentro del territorio del Estado Libre Asociado de Puerto Rico, arrestarlo ellos mismos, o facultar para ello, por medio de una autorización escrita al dorso de la copia certificada de la fianza, a cualquier persona que tenga la edad y discreción suficientes.

## III

La controversia ante nos se reduce a determinar si la fiadora cumplió con su deber de "llevar al acusado a presencia del tribunal" dentro del término de cuarenta (40) días, según lo dispone la Regla 227(a) de Procedimiento Criminal, *supra*. En consecuencia, debemos determinar si procede dejar sin efecto la sentencia del foro de instancia que ordenó la confiscación de la fianza.

La fiadora acepta que la confiscación inicial de la fianza, que llevó a cabo el tribunal de instancia, fue correcta en

derecho. Sin embargo, sostiene que el tribunal erró al no dejar sin efecto la sentencia de confiscación, cuando ésta se encargó de localizar al acusado y "llevarlo a presencia" del tribunal dentro de los cuarenta (40) días a partir de la notificación de la sentencia, según lo dispone la Regla 227(a) de Procedimiento Criminal, *supra*, antes de que ésta se convirtiera en firme y ejecutoria. La fiadora tiene razón. Veamos.

Luego de que el tribunal a quo determinó causa probable para arresto contra Rivera Segarra por los delitos de daño agravado y comercio ilegal de vehículos y piezas, la fiadora prestó la fianza por la cantidad de doce mil dólares ($12,000) para garantizar la comparecencia del acusado a todos los procedimientos ante el tribunal. El acusado incumplió y, luego de varios trámites procesales, el foro de instancia dictó la sentencia sumaria. Ordenó la confiscación de la fianza prestada por la fiadora, según lo dispone la Regla 227(a) de Procedimiento Criminal, *supra*, y notificó esta sentencia a la fiadora el 21 de abril de 1993.

Ahora bien, la controversia ante nos surge a partir del 21 de mayo de 1993, cuando la fiadora presentó una moción ante el tribunal para informar que el acusado se encontraba ingresado en la Institución Regional Metropolitana de Bayamón por delitos que no estaban relacionados con el caso de autos. En dicha moción incluyó la certificación de ingreso del acusado en la institución penal referida.

Aunque el tribunal de instancia reconoció que la razón por la cual el acusado se encontraba encarcelado no tenía relación alguna con el caso en cuestión, confirmó la sentencia de confiscación de la fianza. Fundamentó su decisión en que el acusado no se encontraba encarcelado por las acciones de la fiadora, sino por las gestiones de la Policía de Puerto Rico.

La fiadora, en su comparecencia ante nos, refuta este fundamento de instancia y argumenta que:

La condición que tiene que cumplir la fiadora para ajustarse

a la disposición de la Regla 227 en la etapa posterior a la confiscación de fianza es la de localizar al acusado, dondequiera que éste se encuentre, y llevarlo ante el tribunal por los medios legales disponibles. Alegato de la peticionaria, pág. 11.

Además, la fiadora alegó que el hecho de que localice al acusado ingresado en una institución penal por delitos que nada tienen que ver con los delitos por los cuales ésta lo fió y el que el encarcelamiento no responda a las acciones de la fiadora, no pueden ser impedimentos para que ésta lleve a cabo su búsqueda y realice las gestiones necesarias para llevar al fiado como fugitivo ante la presencia del tribunal.

La fiadora argumenta que, antes de que se le notificara la sentencia de confiscación el 21 de abril de 1993, ya el acusado estaba encarcelado por otros delitos y estaba "bajo la custodia del Estado desde el 13 de abril, y el tribunal de instancia no conocía de este hecho". Petición de *certiorari*, pág. 9. No fue hasta que la fiadora se lo informó, mediante la referida Moción de 21 de mayo de 1993, que el tribunal de instancia tuvo conocimiento del paradero del acusado. Ya para el 14 de mayo de 1993, la fiadora había diligenciado las órdenes de arresto de acuerdo con las copias certificadas de las fianzas, en la cárcel donde se encontraba el acusado, para garantizar su presencia ante el foro de instancia y así poder continuar ventilando los procedimientos en su contra.

En el caso de autos, al localizar al acusado en la institución penal de Bayamón, la fiadora diligenció las órdenes de arresto que surgían de las copias certificadas de las fianzas presentadas e informó al tribunal la gestión realizada dentro de los cuarenta (40) días posteriores a la notificación de la sentencia de confiscación de la fianza, según lo establece la citada Regla 227(a). De esta forma, el superintendente de la institución penal quedó facultado para llevar al acusado a comparecer ante el tribunal de instancia para la continuación de los procedimientos en su contra.

Resolvemos que cuando el acusado se encuentre encarcelado por otros delitos, las gestiones de informar al tribu-

nal su paradero y de diligenciar la orden de arresto en la institución penal, dentro de los cuarenta (40) días posteriores a la notificación de la sentencia de confiscación de la fianza, tienen el efecto de "llevar al acusado a presencia del tribunal" para propósitos de la Regla 227 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Concluir que la referida regla sólo permite relevar al fiador del pago de la fianza mediante el arresto del acusado y su entrega física al tribunal por el propio fiador, no promovería que éste informe al tribunal del paradero del acusado en un caso como el de marras, en que no le era posible obtener su custodia física. Interpretamos de manera amplia la frase "llevar al acusado a presencia del tribunal" contenida en la Regla 227 de Procedimiento Criminal, *supra*, con el propósito de promover que los fiadores realicen, directa o indirectamente, las gestiones necesarias para asegurar la comparecencia del acusado al juicio.

Al amparo de la interpretación anterior concluimos que, en el caso de autos, la fiadora logró interrumpir el término para que la sentencia confiscatoria se convirtiera en firme y ejecutoria. El Tribunal Superior pudo reactivar el caso contra el acusado por las diligencias de la fiadora, ya que, antes de éstas, el tribunal no tenía conocimiento del paradero del acusado. Fue precisamente por la gestión de la fiadora que el acusado compareció ante el tribunal a quo el 7 de junio de 1993. Luego, el 17 de agosto de 1993, el acusado hizo una alegación de culpabilidad tanto por los delitos por los cuales fue fiado en el caso de epígrafe, como por los delitos por los que fue encarcelado posteriormente.

Entendemos que, dentro de las circunstancias particulares del caso de autos, la fiadora cumplió con su deber de localizar al acusado y "llevarlo a presencia del tribunal". Enfatizamos que, como el acusado ya se encontraba encarcelado, "llevarlo a presencia del tribunal" implicaba diligenciar las órdenes de arresto en la cárcel donde estaba recluido e informárselo al tribunal de instancia dentro del

término de cuarenta (40) días que dispone la referida Regla 227(a), como lo hizo la fiadora. De esta forma, la fiadora facultó al superintendente de la institución penal para llevar al acusado ante el tribunal de instancia para la continuación de los procedimientos en su contra.

Por los fundamentos antes expuestos, *revocamos la sentencia de confiscación recurrida.*

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

En el caso de autos, la mayoría del Tribunal resuelve que, en un proceso penal, cuando un foro de instancia confisca correctamente una fianza por no haber comparecido un acusado fugitivo a tres citaciones judiciales distintas, la compañía fiadora, que había incumplido con su deber, tiene derecho a que se deje sin efecto la confiscación de la fianza. Ello, si dentro del período de gracia de cuarenta (40) días que concede la Regla 227(a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, después de la referida confiscación, la compañía fiadora le informa al tribunal de instancia que el acusado en cuestión está encarcelado en Puerto Rico por la comisión de otros delitos y está, por ello, a disposición del tribunal.

Disiento de este dictamen por entender que éste no sólo es contrario a lo que disponen las normas aplicables sino, además, porque es incompatible con la mejor administración de la justicia penal, sobre todo en nuestro país que está tan atribulado por la incesante incidencia del crimen. Veamos.

I

En lo pertinente, la Regla 227(a) de Procedimiento Criminal, *supra*, dispone lo siguiente:

> ... Si el acusado dejare de cumplir cualquiera de las condiciones de la fianza, el tribunal al que correspondiere conocer del delito ordenará a los fiadores ... que muestren causa por la cual no deba confiscarse la fianza. ...
>
> .   .   .   .   .   .   .   .
> De no mediar explicación satisfactoria para tal incumplimiento, el tribunal procederá a dictar sentencia sumaria contra los fiadores ... confiscando el importe de la fianza ... pero la misma no será firme y ejecutoria hasta cuarenta (40) días después de haberse notificado. *Si dentro de ese período los fiadores llevaren al acusado a presencia del tribunal, éste dejará sin efecto dicha sentencia.* (Énfasis suplido.)

Como puede observarse, la regla transcrita regula la situación de un acusado que, en violación de las condiciones de su libertad bajo fianza, no ha comparecido ante el tribunal de instancia cuando ello le fue requerido. En tal situación, si la incomparecencia no está justificada, como no lo está cuando el acusado ilícitamente ha abandonado la jurisdicción —como sucedió en el caso ante nos— procede la confiscación de la fianza. Ello es así, porque el fiador ha incumplido con su deber de asegurar la presencia del acusado en el proceso judicial. No obstante, se le concede un período de gracia a los fiadores para que ellos mismos encuentren y detengan al acusado fugitivo, lo traigan a la jurisdicción de Puerto Rico y lo entreguen al tribunal que ha requerido su presencia. En la referida situación, si los fiadores, por sus propios esfuerzos, al fin cumplen con su deber, encuentran y detienen al acusado, y lo traen ante el tribunal dentro del período de gracia, procede entonces dejar sin efecto la confiscación de la fianza. Tal es el significado propio de la regla en cuestión, que la mayoría ahora disloca al interpretarla, por puro fíat, de modo acomodaticio a la compañía de fianza.

Todo el entramado normativo de la institución de la fianza penal gira precisamente en torno al deber fundamental del fiador de entregar al acusado al tribunal *por su propia cuenta,* cuando éste requiera su presencia. En efecto, cuando un acusado queda libre bajo fianza, la *custodia* del acusado pasa a manos del fiador. Conforme a principios bien arraigados, relativos a la institución de la fianza penal, la responsabilidad del fiador no se limita a la mera prestación de la fianza. Como jurídicamente la custodia del acusado queda en sus manos, la responsabilidad del fiador incluye también la obligación de tomar una parte activa en el proceso penal, para estar al tanto del paradero del acusado y asegurar su presencia cuando se le requiera comparecer ante los tribunales. Tal responsabilidad presupone un alto grado de diligencia por parte del fiador, no sólo para evitar que el acusado abandone la jurisdicción, sino también para localizarlo y ponerlo bajo su custodia, por su propia cuenta, si el acusado llega a fugarse. *Taylor v. Taintor,* 83 U.S. 366 (1872); *American Bankers Ins. Co. v. U.S.,* 596 A.2d 598 (1991); *U.S. v. Castaldo,* 667 F.2d 20 (9no Cir. 1981); *United States v. Mizani,* 605 F.2d 739 (4to Cir. 1979); *U.S. v. Lacey,* 778 F. Supp. 1137 (D. Kan. 1991); *United States v. Payne,* 272 F. Supp. 939 (D. Conn. 1967); *State v. Stotts,* 642 P.2d 618 (Okl. 1981); *Bowling v. State,* 316 S.W.2d 343 (1958); *State v. Douglas,* 112 S.E. 584 (1922); *State v. Merrihew,* 47 Iowa 112 (1877); *Cain et al. v. The State,* 55 Ala. 170 (1876).

Estas normas elementales sobre la fianza penal han sido adoptadas y confirmadas reiteradamente en nuestra jurisdicción. Así pues, en *Pueblo v. Negrón Vázquez,* 109 D.P.R. 265 (1979), señalamos que la obligación del fiador de custodiar al acusado expira cuando el fiador mismo lo entrega a la autoridad competente. Nos referimos allí a la norma prevaleciente en California, de donde provienen principalmente nuestras disposiciones sobre la fianza penal. Conforme a ella, la fianza se extingue al entregarse

al acusado para su ingreso a prisión. En *Pueblo v. Félix Avilés*, 128 D.P.R. 468 (1991), indicamos de nuevo que el fiador tiene la responsabilidad de mantener la custodia del acusado y de asegurarse de que éste comparecerá ante el tribunal que celebra el proceso en su contra.

Esta configuración esencial de la institución de la fianza penal se refleja con cabalidad en nuestras Reglas de Procedimiento Criminal. Así pues, la propia Regla 227 en cuestión dispone que el tribunal, a su discreción, podrá dejar sin efecto la sentencia de confiscación antes de su ejecución, siempre que "los fiadores *hayan producido* al acusado ante el tribunal". (Énfasis suplido.) Igualmente, la Regla 224 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, dispone que, con el fin de ser exonerado de su responsabilidad, el fiador podrá *"entregar al acusado ... al funcionario bajo cuya custodia estaba al prestar fianza"* (énfasis suplido); y la Regla 225 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, establece que "[c]on el objeto de llevar a cabo la entrega del acusado, los fiadores podrán ... *arrestarlo ellos mismos* o facultar para ello". (Énfasis suplido.) Vistas contextualmente, pues, nuestras reglas, igual que nuestra jurisprudencia y que las normas clásicas sobre la fianza penal, presuponen claramente una responsabilidad por parte del fiador mucho más amplia que la ahora dictaminada por la mayoría para casos como el de autos.

No obstante el claro sentido del ordenamiento jurídico sobre el particular, la mayoría, por puro fíat, resuelve que si el acusado fugitivo es arrestado posteriormente por otro delito y se encuentra encarcelado por ello, el mandato de la Regla 227(a), *supra* —de dejar sin efecto la confiscación de la fianza si los fiadores traen al acusado ante el tribunal durante el período de gracia— significa que debe dejarse sin efecto dicha confiscación por la mera notificación al tribunal por parte del fiador incumplidor de que el acusado incompareciente está bajo la custodia del Estado y a disposición del foro a quo. Tal "interpretación" es un acto pa-

tente de legislación judicial, que rebasa la autoridad de este Tribunal y que contraviene los más arraigados principios relativos a la fianza penal. Ningún análisis cabal del transfondo normativo de la fianza, ni de nuestra jurisprudencia sobre el particular, o del sentido propio del texto e historial de nuestras reglas sobre la fianza, permiten inferir que el legislador quiso exonerar al fiador de su responsabilidad cuando el acusado fugitivo es luego arrestado y encarcelado por el propio Estado por haber cometido otro delito. Tal resultado es una pura invención de la mayoría. Va a contrapelo del claro sentido del entramado normativo de la fianza penal.

La mayoría llega al resultado aludido sin ofrecer explicación jurídica alguna para ello. No se cita una sola fuente de derecho ni se ofrece siquiera una razón jurídica que justifique tal resultado.

## II

La conclusión formulada antes, de que no procede que se exonere a la compañía fiadora de pagar la fianza en casos como el de autos, surge también de un examen del *propósito* que se persigue con la disposición de la Regla 227(a), *supra*, que permite dejar sin efecto la confiscación de la fianza, si los fiadores traen al acusado ante el tribunal en algún momento dentro del período de cuarenta (40) días siguientes a la notificación de la sentencia de confiscación. Nótese que dicha disposición, que crea un *período de gracia* en cuanto a los efectos de la sentencia de confiscación, no es una norma común. Lo común, lo que ocurre de ordinario, es que una sentencia surta efectos de inmediato. Véanse: Regla 175 de Procedimiento Criminal, 34 L.P.R.A. Ap. II; Regla 46 de Procedimiento Civil, 32 L.P.R.A. Ap. III. En el caso de la sentencia de confiscación de fianza, sin embargo, se posponen los efectos de dicha sentencia para darle a los fiadores *una oportunidad adicio-*

*nal para cumplir con su responsabilidad.* Véanse los comentarios a la Sec. 208.35 del Código Penal Modelo de American Law Institute de 1958. El período de gracia de cuarenta (40) días es un *incentivo* que el Estado le da a los fiadores para que ellos, por su propia cuenta, puedan localizar, detener y entregar a las autoridades a un acusado que no comparezca y que haya violado las condiciones de su fianza. Así lo han reconocido expresamente los tribunales de California, de donde procede la disposición en cuestión. *People v. Hadley,* 64 Cal. Rptr. 777 (1967); *People v. Rolley,* supra; *People v. Wilcox,* 344 P.2d 847 (Cal. 1959). Todo ello supone, necesariamente, que los fiadores aprovecharon el período de gracia para buscar ellos mismos al acusado desaparecido. Se les exonera del pago de la fianza si son ellos quienes encuentran y entregan al acusado. En fin, se trata de un mecanismo para auxiliar a la administración de la justicia criminal. No tiene el propósito de enriquecer a los fiadores por la labor que realizó el propio Estado al arrestar al acusado fugitivo por la comisión de otro delito.

Una vez se confisca la fianza por la incomparecencia del acusado, muchas jurisdicciones, incluyendo Puerto Rico, le conceden otra oportunidad más al fiador para que cumpla con su obligación contractual, dándole un período de gracia para localizar al acusado desaparecido y entregarlo al tribunal. Si el fiador no actúa con diligencia durante este período para lograr la custodia del acusado *por su propia cuenta,* está obligado finalmente a pagar la fianza. *People v. United Bonding Insurance Co.,* 77 Cal. Rptr. 310 (1969); *People v. Jaramillo,* 428 P.2d 67 (Co. 1967); *State v. Arrington,* 131 S.E.2d 382 (1963).

En vista de lo anterior, sería contrario al claro propósito de la Regla 227(a) de Procedimiento Criminal, *supra,* exonerar del pago de la fianza a una compañía fiadora que no hizo todo lo que estaba a su alcance, no sólo para evitar la fuga del acusado, sino además para localizarlo y custo-

diarlo por su propia cuenta durante el período de gracia posterior a la confiscación de la fianza.

## III

Contrario a lo que sucede en Puerto Rico, en California se dispone *por estatuto* que los fiadores en casos penales quedan exonerados de pagar la fianza, si están impedidos de entregar físicamente al acusado porque dicho acusado estaba detenido por autoridades civiles o militares. Sec. 1305 del Código Penal de California (51 Cal. Code sec. 1305). Allá en California la norma aludida no procede del puro fíat judicial, sino que ha sido dispuesta por la expresa voluntad legislativa y está *sujeta a esenciales condiciones de diligencia de parte del fiador.* Ello da lugar a un esquema normativo muy distinto de lo resuelto en este caso por la mayoría.

La expresa disposición estatutaria de California, que no existe en Puerto Rico, aplica *sólo* en casos en que los fiadores mismos *han localizado al acusado fugitivo y obtenido su custodia física por su cuenta, pero se han visto impedidos de entregarlo finalmente al tribunal debido a su posterior arresto por el Estado.* Esta situación es muy diferente a la que tenemos ante nos en este caso. Como bien ha señalado el máximo foro apelativo de California, la disposición aludida que exonera a los fiadores

> ... seems designed to avoid penalizing the bail who has in fact procured a defaulting defendant's arrest, but who is prevented from effecting his immediate return because the arresting authorities detain the defendant beyond the 90-day period. *People v. Rolley*, 35 Cal. Rptr. 803, 804 (1963).

En el caso ante nos, la compañía de fianza no sólo no cumplió con su deber de asegurar la comparecencia del acusado ante el tribunal cuando se le requirió varias veces, sino que, además, no fue la que procuró finalmente el arresto o la custodia del acusado fugitivo. Por lo tanto, no

tenía derecho a que se le exonerara del pago de la fianza, aun en el supuesto de que fuese legítimo adoptar judicialmente en Puerto Rico la norma sobre el particular que se ha legislado en California.

## IV

La norma que se ha establecido en California, de exonerar a los fiadores del pago de la fianza cuando han procurado con diligencia la custodia de un acusado fugitivo que habían fiado pero que no pudieron entregar al tribunal porque otras autoridades lo habían detenido, no es la única que se ha adoptado en Estados Unidos para atender situaciones como las que encaramos en este caso. En algunas jurisdicciones estatales de Estados Unidos, los fiadores *no son exonerados* de ningún modo de su responsabilidad, y están obligados a pagar la fianza si el acusado fugitivo es arrestado por el Estado posteriormente por otro delito. *Ex parte A-1 Bonding Co. of Montgomery, Inc.*, 420 So. 2d 781 (1982); *People v. Brown*, 408 N.Y.S.2d 927 (1978); *State v. Nelson*, 436 P.2d 792 (Utah 1968); *People v. Mc Cracken*, 161 N.W.2d 758 (1968); *State v. Superior Court*, 407 P.2d 943 (Ariz. 1965); *State v. Mitchell*, 212 A.2d 873 (1965); *State v. Pelley*, 24 S.E.2d 635 (1943); *Mix v. The People*, 26 Ill. 32 (1861).

En otras jurisdicciones estatales, y principalmente en la jurisdicción federal, la norma que prevalece es que si el fiador localiza al acusado fugitivo y lo entrega al tribunal, puede exonerársele del pago de la fianza; pero si quien lo localiza y arresta es una autoridad gubernamental, entonces se toma en consideración el costo en que incurrió el Gobierno en lograr la custodia del acusado fugitivo y se deduce del monto de la fianza que ha de acreditársele al fiador, si la fuga del acusado no fue imputable al fiador. El fiador, en otras palabras, responde al menos por los costos incurridos por el Estado para realizar lo que le competía

hacer al fiador. *United States v. Abernathy*, 757 F.2d 1012 (9no Cir. 1985); *Accredited Sur. & Cas. Co. v. United States*, 723 F.2d 368 (4to Cir. 1983); *Jeffers v. United States*, 588 F.2d 425 (4to Cir. 1978); *United States v. Casanova*, 472 F.2d 1223 (9no Cir. 1973); *State v. Midland Insurance Company*, 494 P.2d 1228 (Kan. 1972); *United States v. Nash*, 429 F.2d 533 (8vo. Cir. 1970); *Sifuentes-Romero v. United States*, 374 F.2d 620 (5to Cir. 1967); *United States v. Bradley*, 43 F.R.D. 278 (1967); *Franco v. United States*, 342 F.2d 918 (D.C. Cir. 1965); *United States v. Kelley*, 38 F.R.D. 320 (1965); *Larson v. United States*, 296 F.2d 167 (8vo Cir. 1961).

Existen, pues, importantes alternativas a la norma que la mayoría adopta en este caso. En Puerto Rico es conocido que desde hace tiempo existe un marcado descontento con la inefectividad de las compañías de fianza.[1] Éstas se dedican a un negocio lucrativo, sin incurrir en grandes riesgos o gastos sustanciales. Su función de hacer viable el derecho constitucional que tienen los imputados, de quedar libres mientras se les juzga, se realiza principalmente respecto de aquellos que tengan medios para pagar o satisfacer lo que exigen dichas compañías antes de prestar la fianza requerida. Las personas sin recursos generalmente no se benefician de sus servicios. Más aún, han existido problemas significativos respecto del cobro de las fianzas confiscadas y algunos también respecto de la incomparecencia a los procesos penales de acusados que están en libertad bajo fianza. El referido descontento con las compañías de fianzas es, sin dudas, una de la razones por las cuales, recientemente, la Asamblea Legislativa aprobó la Ley Núm. 177 de 12 de agosto de 1995 (4 L.P.R.A. sec. 1301 *et seq.*), mediante la cual se crea la Oficina de Servicios con Antelación al Juicio. Dicha legislación tiene como propósi-

---

[1] Véase Informe del Secretariado de la Conferencia Judicial sobre la Fianza, Conferencia Judicial de Puerto Rico, noviembre de 1979.

tos expresos: (1) asegurar la presencia del acusado en las diversas etapas del juicio y (2) propiciar la eliminación de los efectos de la desigualdad económica en la obtención de la libertad provisional. Refleja con claridad la necesidad de superar las limitaciones que ocasionan las prácticas existentes en relación con la fianza.

A la luz de lo anterior, tiene poco sentido jurídico una norma como la que adopta la mayoría en este caso, cuyo único resultado claro es beneficiar aún más a las referidas compañías en su lucrativo negocio. Más sentido tiene lo resuelto por el foro de instancia, ya que al menos crea un incentivo para que los fiadores intenten cumplir con diligencia la responsabilidad que les compete. Desde el punto de vista del logro de la más efectiva administración de la justicia penal, la norma que establece la mayoría en este caso es la menos adecuada de todas las alternativas que se conocen. No conduce a que los fiadores se esfuercen en evitar que los acusados se fuguen mientras estén libres bajo fianza, o a que colaboren en su captura, una vez hayan abandonado ilegalmente la jurisdicción. Dados los graves problemas que afligen a nuestra comunidad en lo que se refiere a la lucha contra el crimen, dicha norma no se ajusta a nuestras realidades ni a las necesidades sociales prevalecientes, como se esperaría de un dictamen de este Tribunal.

Por todo lo anterior, disiento.