EL PUEBLO DE PUERTO RICO, peticionario, *v.* OSCAR MARTÍNEZ HERNÁNDEZ y COMPAÑÍA DE FIANZAS DE PUERTO RICO, recurridos.

Número: CC-2002-192          Resuelto: 22 de enero de 2003

*Roberto J. Sánchez Ramos, procurador general, Vanessa Lugo Flores, subprocuradora general,* y *Lisa M. Durán Ortiz, procuradora general auxiliar,* abogados de la parte peticionaria; *Luis Bestard,* Compañía de Fianzas de Puerto Rico, abogados de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR CORRADA DEL RÍO emitió la opinión del Tribunal.

## I

Nos corresponde determinar si una sentencia confiscatoria de una fianza criminal devenga intereses legales conforme a lo dispuesto en la Regla 44.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

## II

El 9 de diciembre de 1997 la Compañía de Fianzas de Puerto Rico (en adelante la compañía fiadora o la recurrida) suscribió un contrato de fianza criminal ante el Tribunal de Distrito, Sala de San Juan, por la suma de $96,500 para garantizar la presencia del Sr. Oscar Martínez (en adelante señor Martínez) durante el procedimiento criminal habido en su contra.[1] El contrato disponía, en lo pertinente:

> ... la fiadora, por la presente responde de que el susodicho acusado comparecerá a contestar al cargo ante cualquier tri-

---

[1] Contra el señor Martínez se presentaron cargos por asesinato en primer grado e infracción a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418.

bunal en que se estuviere sustanciando y de que en todo tiempo estará pronto a acatar las órdenes y providencias del Tribunal, y que comparecerá a la vista preliminar en los casos apropiados, y si fuere declarado culpable, de que comparecerá al pronunciamiento de la sentencia y se someterá a la misma; y si dejare de estar y pasar por cualquiera de estas condiciones, la fiadora se obliga a pagar al "Estado Libre Asociado" la cantidad [pactada]. Petición de *certiorari*, Apéndice II, pág. 3.

Ante la incomparecencia del señor Martínez al acto de pronunciamiento de sentencia, el Tribunal de Primera Instancia (en adelante TPI) requirió a la compañía fiadora mostrar causa por la cual no debía ser confiscada la fianza prestada. Evaluada su comparecencia, el 20 de marzo de 2001, el TPI dictó sentencia en la que confiscaba el importe de la fianza.([2]) La sentencia fue notificada el 30 de marzo de 2000.

Así las cosas, el 19 de abril de 2000, la División de Confiscaciones del Departamento de Justicia del Estado Libre Asociado de Puerto Rico presentó una Moción en Solicitud de Ejecución de Sentencia ante el TPI. Reclamó el pago de los $96,500.00 adeudados por concepto del contrato de fianza. Asimismo, solicitó la imposición de intereses legales computados a razón del 9.5% desde la fecha del pronunciamiento de la sentencia hasta que ésta fuese satisfecha. El TPI procedió a dictar la correspondiente Orden de Expedición de Mandamiento conforme a lo intimado. No obstante, tras varios trámites procesales,([3]) dicho foro dejó sin efecto la imposición de intereses legales sobre el monto de la fianza confiscada.

Inconforme, el Procurador General, en representación

---

([2]) Con anterioridad, el TPI había dictado una sentencia confiscatoria de fianza por la cantidad de $1,100,000. No obstante, a petición de la compañía fiadora, dicha cantidad se dejó sin efecto.

([3]) La compañía fiadora presentó una Réplica a Moción en Solicitud de Ejecución de Sentencia, a través de la cual cuestionó la imposición de intereses en el trámite de ejecución de la sentencia. Subsiguientemente, la División de Confiscaciones del Departamento de Justicia presentó un escrito de dúplica. Considerados los anteriores, el TPI celebró una vista para dilucidar las posiciones de las partes sobre el particular.

del Pueblo de Puerto Rico (en adelante peticionario o Procurador), presentó un recurso de *certiorari* ante el Tribunal de Circuito de Apelaciones (en adelante TCA). Le imputó al TPI haber errado al resolver que una sentencia confiscatoria de una fianza criminal no devengaba intereses legales según las disposiciones de la Regla 44.3 de Procedimiento Civil, *supra.*

Mediante Resolución de 31 de enero de 2002, dicho foro denegó la expedición del auto solicitado. Razonó que, si bien es cierto que el trámite de ejecución de una sentencia de confiscación de fianza se realiza conforme con lo dispuesto en las Reglas de Procedimiento Civil, el asunto referente al interés devengado por la fianza está desligado a la cuestión de su ejecución.[4]

Insatisfecho con dicho dictamen, el peticionario acudió ante nos mediante un recurso de *certiorari*, en el cual señala la comisión del mismo error, a saber:

> Erró el Tribunal de Circuito de Apelaciones al resolver que no proceden los intereses legales sobre el monto de una sentencia sobre confiscación de fianza penal, aun cuando la sentencia es de carácter civil y ordena el pago de dinero, por lo que está reglamentada por las Reglas 51 y 44.3 de Procedimiento Civil, las cuales disponen expresamente que dicha sentencia devenga intereses legales.Petición de *certiorari*, pág. 8.

Mediante Resolución de 5 de abril de 2002, expedimos el auto solicitado. Tanto el Procurador como la compañía fiadora han presentado sus respectivos alegatos. Por medio de su comparecencia, la compañía fiadora nos ha advertido que el 22 de mayo de 2002 le satisfizo al peticionario $96,500 correspondientes a la fianza confiscada en el caso de marras. Queda pendiente la procedencia de la imposición de una suma por concepto de intereses sobre la

---

[4] Resolución del Tribunal de Circuito de Apelaciones de 31 de enero de 2002. Petición de *certiorari*, Apéndice XVIII, págs. 149–156.

sentencia, asunto que consideramos en el presente recurso. Procedemos a resolver.([5])

## III

■ Sabido es que en Puerto Rico el derecho a fianza es de rango constitucional. La Sec. 11 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, consagra el derecho de todo acusado a permanecer en libertad bajo fianza antes de mediar un fallo condenatorio y a que la fianza que se le imponga no sea excesiva.([6])

■ La fianza es un modo de implementar la presunción de inocencia, pues sería un contrasentido encarcelar a una persona que se considera inocente y que eventualmente puede ser exonerada de culpa. Informe especial sobre el derecho a la vida, la seguridad y la libertad personal frente a los problemas de la delincuencia, Comisión de Derechos Civiles, 20 de marzo de 1968. En conformidad con lo anterior, ya hace varias décadas atrás aclaramos que la

---

([5]) Tomamos conocimiento de que existe una marcada incongruencia entre las decisiones de los distintos paneles que componen el Tribunal de Circuito de Apelaciones, en lo que respecta a la controversia que tenemos ante nos. Algunos han negado la procedencia de la imposición de intereses a sentencias como la que motiva el recurso de autos. Véanse: *Pueblo v. Compañía de Fianzas*, KLCE200101211, Circuito Regional III Arecibo/Utuado, Apéndice XIV, pág. 115; *Pueblo v. García Almeida*, KLCE0101001, Circuito Regional IV Aguadilla/Mayagüez, Apéndice XV, pág. 123. Mientras, otros han adoptado la posición contraria, avalando la imposición de los intereses. Véanse: *Pueblo v. Torres Vargas y otros*, KLCE0101187; KLCE0101216; KLCE0101218; KLCE0101253; KLCE0101303; KLCE0101327; KLCE0101337; KLCE0101360 (consolidados), Circuito Regional de Ponce/AreciboAibonito, Apéndice XVI, pág. 131; *Pueblo v. Díaz Rivera*, KLCE200101449, Circuito Regional de Bayamón, Apéndice XVII, pág. 138; *Pueblo v. Balbuena Castro*, KLCE020031, Circuito Regional de Carolina/Fajardo, Anejo I, pág. 3; *Pueblo v. Luciano González*, KLCE0200047, Circuito Regional de Ponce/Aibonito, Anejo II, pág. 8.

([6]) Anterior a nuestra Constitución, la Carta de Derechos de la Ley Jones de 1917 disponía el derecho de toda persona a prestar fianza para quedar en libertad provisional antes de la sentencia, excepto en crímenes capitales, cuando la prueba fuera evidente o cuando la presunción grande. Esta excepción desapareció cuando se abolió la pena de muerte en 1929. I. Betancourt y Lebrón, *Los derechos del acusado*, San Juan, Ed. Graficart, 1975.

fianza no se fija con el propósito de castigar a la persona acusada, sino con el objetivo de asegurar la presencia de ésta ante el tribunal cuando así le sea requerido. *Marrero v. El Pueblo*, 31 D.P.R. 901 (1923). Así lo hemos ratificado en ocasiones posteriores. Véanse: *Pueblo v. Soto Ortiz*, 151 D.P.R. 619 (2000); *Pueblo v. Newport Bonding & Surety Co.*, 145 D.P.R. 546 (1998).

■ La prestación de la fianza garantiza, por lo tanto, la sumisión del acusado a todas las órdenes, las citaciones y los procedimientos ante el tribunal, surgidas en virtud del procedimiento criminal habido en su contra. *Pueblo v. Cía. de Fianzas de P.R.*, 139 D.P.R. 206 (1995). Es mediante el contrato de fianza que el fiador se compromete con el Estado a garantizar la presencia del imputado de delito ante el tribunal. *Pueblo v. Félix Avilés*, 128 D.P.R. 468 (1991); *Pueblo v. Newport Bonding & Surety Co*, supra. La fianza se mantiene en vigor desde que se admite por cualquier magistrado y cubre todo el proceso judicial hasta su conclusión, ya sea por razón del pronunciamiento y ejecución de sentencia, o por la absolución del acusado. *Pueblo v. Soto Ortiz*, supra.

■ Ahora bien, toda vez que el Estado es el que originalmente tiene la responsabilidad de mantener la custodia de aquellos que son acusados de transgredir la ley y consiente en transferirla al fiador cuando éste así lo solicita, el incumplimiento del fiado es el incumplimiento del custodio, quien deberá responder con la garantía ofrecida. Véase Exposición de Motivos Ley Núm. 55 de 1 de julio de 1988, Leyes de Puerto Rico 280.

■ Vemos, por lo tanto, que la responsabilidad del fiador no se limita a la mera prestación de la fianza, sino que está obligado a tomar parte activa en todo el proceso penal para estar al tanto del paradero del imputado de delito y asegurar su sumisión al proceso criminal pendiente. De no cumplir el fiador su compromiso con el

Estado, vendrá obligado a pagarle a este último la cantidad consignada como fianza. *Pueblo v. Félix Avilés*, supra.

■ De acuerdo con estos principios, anteriormente hemos resuelto que la incomparecencia del acusado a alguna de las instancias del proceso sin que medie razonable justificación, constituye causa suficiente para que se decrete la confiscación de la fianza a favor del Estado. *Pueblo v. Newport Bonding & Surety Co.*, supra.

A esos efectos, la Regla 227(a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, provee un mecanismo para los casos en que sea necesaria la confiscación de la fianza prestada. Ésta dispone que, en caso de que el imputado no comparezca, el tribunal emitirá una orden mediante la cual le conceda oportunidad a la compañía fiadora para que muestre causa por la cual no se deba confiscar la fianza acordada. De no mediar una explicación satisfactoria para el incumplimiento, el tribunal procederá a dictar una sentencia sumaria contra el fiador y confiscará el importe de la fianza. La sentencia en cuestión advendrá firme y ejecutoria pasados cuarenta días de haberse dictado. No obstante, si dentro de ese período de cuarenta días el fiador llevara al acusado ante la presencia del tribunal, éste dejará sin efecto la sentencia dictada. *Pueblo v. Cía de Fianzas de P.R.*, supra.

■ En lo pertinente a la controversia de autos, la antedicha regla ordena:

> *Convertida en firme y ejecutoria una sentencia confiscando la fianza o el depósito, el secretario de tribunal, sin necesidad de ulterior requerimiento remitirá inmediatamente copia certificada de dicha sentencia al Secretario de Justicia para que proceda a la ejecución de la misma de acuerdo a la Regla 51 de las Reglas de Procedimiento Civil para el Tribunal General de Justicia,* e igualmente remitirá al Secretario de Hacienda el depósito en su poder. (Énfasis suplido.)

Como puede notarse, la citada regla exige que el Secretario de Justicia ejecute la sentencia de confiscación del

modo ordinario en que se ejecutan las sentencias civiles; es decir, mediante la solicitud del correspondiente mandamiento de ejecución. El mandamiento especificará los términos de la sentencia, y si ésta ordenare el pago de dinero, expresará la cuantía y la cantidad pendiente de pago. Véase *La fianza: informe del Secretariado de la Conferencia Judicial de Puerto Rico*, Conferencia Judicial de Puerto Rico, sexta sesión plenaria, noviembre de 1979.

Esto es así toda vez que, a pesar de que las reglas de Procedimiento Criminal contienen las disposiciones relacionadas al tema de la fianza criminal y su confiscación, el procedimiento para declararla confiscada y hacerla efectiva es de carácter civil, aunque ésta se haya prestado como parte de un procedimiento criminal. *Pueblo v. Del Valle*, 35 D.P.R. 478 (1926).[7]

Nótese que si bien la sentencia confiscatoria de una fianza criminal y su eventual ejecución emanan de un caso criminal, dicho procedimiento no involucra la inocencia o culpabilidad del acusado, ni supone la continuación del procedimiento criminal en el cual se prestó la fianza; tampoco presupone la imposición de un castigo al fiador, sino que entraña una acción civil cuya finalidad es hacer cumplir la obligación del fiador con el Estado, nacida en virtud del contrato de fianza otorgado. 8A Am. Jur. 2d Sec. 113 (1997).[8]

---

[7] Igual interpretación prevalece en otras jurisdicciones. A manera de ejemplo, véase *United States v. Abernathy*, 757 F.2d 1012, 1014 (9no Cir. 1985), "an action to enforce a bond forfeiture, which is essentially an action on a contract between the government and the defendants, is a civil action"; *United States v. Plechner*, 577 F.2d 596, 598 (9no Cir. 1978), "[a] bail bond is a contract between the government and the defendant and his surety. Upon forfeiture, the surety becomes the government's debtor. Thus, the government's motion for judgment was 'civil, not criminal, in nature' ". Véanse, además: *State v. Wheeler*, 508 So.2d 1384, 1386 (La. 1987), "an action to forfeit a bail bond ... is a civil proceeding and subject to the rules of civil procedure"; *People v. Wilcox*, 349 P.2d 522, 524 (Cal.1960), "[in relationship to criminal prosecution] the forfeiture of a bail is an independent, collateral matter, civil in nature ...".

[8] Véase, al respecto, *In re Collins*, 173 F.3d 924, 932 (4to Cir. 1999): "These bail bond forfeiture obligations, as to [him], arose from a purely financial and contractual agreement."

Aclarado lo anterior, la Regla 51 de Procedimiento Civil, 32 L.P.R.A. Ap. III, a la cual nos remite la Regla 227 de Procedimiento Criminal, *supra*, regula el proceso de ejecución de sentencia, al disponer en lo pertinente:

> La parte a cuyo favor se dicte una sentencia, podrá ejecutarla mediante el procedimiento fijado en esta Regla 51, en cualquier tiempo dentro de cinco (5), años de ser firme la misma. Expirado dicho término, podrá ejecutarse la sentencia mediante autorización del tribunal a moción de parte y previa notificación a todas las partes. 32 L.P.R.A. Ap. III, R. 51.1.

En su alegato ante nos, el Procurador alega que, dado el hecho de que una sentencia de confiscación de una fianza criminal impone el pago de una suma de dinero como consecuencia del incumplimiento de las obligaciones contraídas en el contrato de fianza, dicho dictamen conlleva la imposición de intereses a su favor.

Por su parte, la compañía fiadora entiende que el Estado debe limitarse a confiscar e incautar lo consignado como fianza y nada más, debido a la naturaleza declarativa de la sentencia de confiscación y a que la acción de confiscar implica la adquisición propietaria de un haber del cual ya se ostenta su posesión. A esos efectos, añade que, cuando el importe de la fianza se deposita en efectivo y es confiscado, lo que se deberá remitir al Secretario de Hacienda es la cantidad depositada y nada más. Asimismo, cuando la fianza documental se confisca, la cantidad que pague la fiadora o que incaute el Estado deberá limitarse a aquella consignada como fianza.

Sin duda alguna nos encontramos ante un asunto en el cual debemos suplir una laguna legislativa. Pese a que la Regla 227(a) de Procedimiento Criminal, *supra*, refiere el asunto de la ejecución de la sentencia confiscatoria de fianza criminal a lo contenido en la Regla 51 de Procedimiento Civil, *supra*, no se dispone con claridad el procedi-

miento para hacer efectiva dicha ejecución. Asimismo, si bien no ordena, tampoco proscribe la imposición de intereses sobre la sentencia dictada.

Debemos advertir que la doctrina se encuentra marcadamente dividida en cuanto a este particular. Décadas atrás, otras jurisdicciones se inclinaban a disponer que su facultad estuviera limitada a ordenar la confiscación de la fianza, lo cual no incluía el poder de ordenar remedios adicionales. Véase *United States v. Broadhead*, 127 U.S. 212 (1888). Varios estados han avalado dicha posición. Véanse: *State v. Morse*, 105 N.W.2d 572 (Neb. 1960); *People v. Perisini*, 111 N.E. 253 (N.Y. 1916). No obstante, otros han marcado una tendencia a reconocer legislativamente la imposición de intereses a este tipo de dictamen. Véanse: *Wiegand v. State*, 685 A.2d 880 (Md. 1996); *Dees v. State of Texas* 865 S.W.2d 461 (Tex. 1993). Finalmente, otros han dejado en suspenso la controversia. Véase *Ex Parte Serns*, 410 So.2d 86 (Ala. 1982).

Se nos hace necesario, pues, evaluar la naturaleza del contrato otorgado por la compañía fiadora y las consecuencias que su incumplimiento acarrea.

## IV

El contrato de fianza criminal se formaliza acorde con lo prescrito en las Reglas de Procedimiento Criminal, las cuales disponen, en lo pertinente al caso ante nos, que

[t]oda fianza será suscrita, o reconocida, ante un magistrado o secretario, según corresponda, bien por una compañía autorizada para prestar fianzas en Puerto Rico; bien por el Director Ejecutivo del Proyecto de Fianzas Aceleradas ..., al cual se le considerará, para los efectos de esta regla, como una compañía autorizada para prestar fianzas en Puerto Rico, incluyendo específicamente, pero sin que ello se entienda como una limitación, la potestad de prestar fianzas documentales o en efec-

tivo .... Regla 220 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.(⁹)

Bastante se ha debatido sobre la necesidad y conveniencia de las compañías fiadoras en nuestro sistema. No estamos ajenos a la realidad que se vive con éstas, las cuales han provocado grandes sinsabores a la administración de la justicia. Estas compañías funcionan de manera análoga a las compañías de seguros; hay una concentración de fondos en una entidad común que pagará en aquellos casos en donde se violen las condiciones que dieron lugar a la fianza. Como toda aseguradora, es su obligación hacer efectivas las reclamaciones que se hagan contra el fondo común. Dicha reclamación, en la situación particular de las compañías fiadoras, viene por vía de una sentencia dictada en su contra dentro del proceso criminal contra el fiado que no comparece. Véase Informe del Secretariado de la Conferencia Judicial sobre la fianza, noviembre 1979; Manual propuesto para los procedimientos de fijación, admisión y confiscación de fianza, Secretariado de la Conferencia Judicial, diciembre 1979; Estudio sobre la fianza criminal, Oficina del Comisionado de Seguros, enero 1974.(¹⁰)

---

(⁹) Igualmente, el contrato de fianza suscrito por una compañía autorizada para prestar fianzas en Puerto Rico está regulado por el Código de Seguros, en aquella parte relativa a los seguros de garantía. 26 L.P.R.A. sec. 409(3).

(¹⁰) En lo que concierne al funcionamiento y la eficacia de las compañías fiadoras, debemos destacar que, desde el punto de vista del imputado de delito, la fianza criminal no exime al fiado de la responsabilidad con la compañía fiadora. Previendo la eventualidad de tener que pagar en caso de incomparecencia del fiado, las compañías fiadoras le exigen el pago de primas y el otorgamiento de garantías colaterales para cubrir el monto de la fianza, de manera que su riesgo quede asegurado. Mientras, desde el punto de vista del Estado, las compañías fiadoras no cumplen su compromiso de procurar la comparecencia del imputado de delito o, en su defecto, pagar el importe de la fianza, muy a pesar de que, ante todo, éstas funcionan con una licencia concedida por el Estado y están obligadas a cumplir con el mandato de ley, el cual supone que éstas tengan los fondos disponibles para pagar llegado el momento para ello. De otra parte, resulta muy difícil, casi imposible, cobrar lo adeudado por estas compañías en concepto de sentencias firmes y confiscaciones. A esos efectos, estudios reflejan que para el año 1973 cinco compañías fiadoras adeudaban al Estado una suma superior a los dos y medio millones de dólares por concepto de fianzas criminales confiscadas que no se habían podido ejecutar. Ya para 1980 la suma ascendía a los once millones de dólares. Esta situación ha provocado que el Estado, en

■ Ahora bien, con respecto a la controversia que aquí nos concierne, debemos reconocer que, no empece a la naturaleza sui géneris del contrato de fianza suscrito por este tipo de compañías, y al hecho de que su existencia y eficacia están supeditadas a la existencia de un procedimiento criminal, éste no pierde su carácter de obligación contractual accesoria, consistente en el otorgamiento de una garantía de incuestionable carácter monetario.[11]

■ Mediante el contrato de fianza, el Gobierno obtiene del fiador la promesa de que éste pagará la cantidad pactada como fianza en caso de que el acusado incumpla con las condiciones impuestas por el tribunal. Advenido dicho incumplimiento por parte del acusado, y agotado el remedio provisto en pro del fiador en la Regla 227(a) de Procedimiento Criminal, *supra,* la opción del Estado será procurar que el tribunal dicte sentencia, ordenando el pago de la suma de dinero correspondiente a la fianza confiscada.

Sobre este particular nos parece ilustrativo *In re Hickman,* supra, pág. 402:

> Under [the bail bond] agreement, the State does not require payment of the entire amount of the bond in order to secure release. Rather, the State requires a contractual promise to pay the amount of the bond by the defendant or his surety if the defendant fails to comply with the conditions of the bond. *Upon default, the State merely seeks a money judgment* as damages for breach of contract against the obligor under the bond. (Énfasis suplido.)

■ Si bien lo pactado como fianza en este tipo de contratos consiste de una suma predeterminada que no pacta el pago de intereses, una vez ésta es confiscada con-

---

un intento de aminorar el mal, procure acuerdos transigiendo lo adeudado por sumas insignificantes. La situación al día de hoy no ha cambiado mucho.

[11] Sobre la naturaleza *sui generis* del contrato de fianza, véase, a fines ilustrativos, *In re Hickman,* 260 F.3d 400, 406 (5to Cir. 2001): "A bail contract is *sui generis*. While treated as a contract under state law in many respects, a bail bond is certainly distinguishable from the typical contract."

forme a derecho, se convierte en una deuda por cobrar, y como tal, el fiador se ve obligado a su pago, así como a los intereses correspondientes.([12])

▪ Aclarado lo anterior, la Regla 44.3 de Procedimiento Civil, *supra,* advierte que

> [s]e incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que esté en vigor al momento de dictarse la sentencia, en toda sentencia *que ordena el pago de dinero,* a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó sentencia y hasta que ésta sea satisfecha, incluyendo costas y honorarios de abogado. El tipo de interés se hará constar en la sentencia. (Énfasis suplido.)

Hemos resuelto que los intereses aludidos en la citada regla forman parte de toda sentencia civil que ordene el pago de dinero, y que éstos son exigibles y así pueden ser recobrados aunque no hayan sido mencionados en la sentencia. *Riley v. Rodríguez Pacheco,* 124 D.P.R. 733 (1989); *Quiñones López v. Manzano Pozas,* 141 D.P.R. 139 (1996).

Al aplicar dicho precepto a la situación de autos concluimos que la fianza criminal está sujeta al pago de intereses legales por la naturaleza civil de su procedimiento de confiscación y ejecución, y porque una sentencia confiscatoria tiene como consecuencia principal la imposición del pago de una suma de dinero, impuesta al fiador en virtud de su incumplimiento con la obligación contraída en el contrato de fianza.

Ciertamente, la imposición de intereses legales no constituye un castigo a las compañías fiadoras, sino que es un derecho que le asiste a la parte acreedora de un crédito

---

([12]) Nótese que, en el caso de la fianza documental, como aquella otorgada en el caso de autos, el Estado no tiene dinero alguno en su poder, sino la promesa escrita del fiador, mediante la cual se le garantiza que, en caso de incumplimiento del fiado, se le reconoce su acreencia sobre el monto de fianza pactado. Incumplidos, pues, los términos del contrato de fianza, la obligación del Estado se circunscribe a aquella de una deuda monetaria, la de cobrar del fiador la garantía pactada.

exigible. Desde luego, si el fiador no quiere pagar intereses, lo que procede es pagar el monto de la fianza pactada tan pronto se dicte la sentencia confiscatoria, o consignar su importe en el tribunal oportunamente.

## V

Por los fundamentos antes expuestos, *revocamos el dictamen del Tribunal del Circuito de Apelaciones y el del Tribunal de Primera Instancia al denegar la imposición de los intereses legales provistos en la Regla 44.3 de Procedimiento Civil,* supra, *y decretamos el pago de dichos intereses sobre la sentencia confiscatoria de la fianza criminal.*

*Se dictará sentencia de conformidad.*

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Rivera Pérez no interviene.